HOLMES CONSTRUCTION COMPANY,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 35677.

United States District Court
N. D. Ohio, E. D.

Sept. 29, 1961.

Albert B. Arbaugh, of Black, McCuskey, Souers & Arbaugh, Canton, Ohio, for plaintiff.

Russell E. Ake, Canton, Ohio, for U. S.

CONNELL, Chief Judge.

This is an action for refund of transportation taxes imposed under Section 3475(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3475(a) and Section 4271(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4271(a) and paid by the plaintiff to a railroad common carrier. The case was submitted on a stipulation of facts, from which we quote the relevant portions.

"2. The plaintiff is an Ohio corporation with its principal place of business in the City of Wooster, Wayne County, Ohio. At all times material to this cause, the plaintiff owned and operated a plant on the premises of the National Tube Division of the United States Steel Corporation at Lorain, Ohio, in which it engaged in processing fine iron ores into ore block by the addition of adhesive elements and the application of high pressures.

"3. The ore block was sold to the Lorain plant of National Tube Division of United States Steel Corporation at a price determined by its weight. The ore block was delivered by the Lake Terminal Railroad Company over its tracks on the premises of said National Tube Division. The Lake Terminal Railroad Company also weighed the ore block for plaintiff at a stipulated rate per car.

"4. The transportation charges of The Lake Terminal Railroad Company were determined by a flat fee or rate per car and said Railroad did not require that ore block transported by it be weighed. The ore block was weighed to determine the price to be charged by the plaintiff on the sale of the ore block to said National Tube Division.

"5. During the period from September 30, 1953, to and including September 30, 1957, said The Lake Terminal Railroad Company weighed a total of 6,006 cars for plaintiff's account and charged and collected from the plaintiff for such weigh-ing the aggregate sume [sic] of $37,935.58, and in addition charged to and collected from plaintiff the sum of $1,138.06 as transportation taxes due to the defendant under the Internal Revenue Code of 1939 and the Internal Revenue Code of 1954."

The sections of the Internal Revenue Code cited above are virtually the same and impose a tax upon "the transportation of property" by rail, motor vehicle, water or air from one point in the United States to another, but the Code itself is silent as to the scope of the term transportation. Plaintiff and the Government are in agreement that the definition of the term "transportation" applicable here is the one which appears in Section 143.1 of the Treasury Regulations 113:

"The term "transportation" as used herein means the movement of property by a person engaged in the business of transporting property for hire, including interstate, intrastate, and intracity or other local movements, as well as towing, ferrying, switching, etc. In general, it includes accessorial services furnished in connection with a transportation movement, such as loading, unloading, blocking and staking, elevation, transfer in transit, ventilation, refrigeration, icing, storage, demurrage, lighterage, trimming of cargo in vessels, wharfage, handling, feeding and watering live stock, and similar services and facilities."

The precise point of dispute is whether the weighing services involved in this case are to be classified as accessorial to the transportation movement.

The Government in its brief points to a long line of cases wherein the Commissioner's interpretation of this statute has been upheld by the courts. The regulation, supra, has been read into the law by the courts virtually in its entirety. See Armour and Co. v. United States, 169 F. Supp. 521 (Ct.Cl.1959) wherein the Court of Claims rejected its prior position that the regulation exceeded the Congressional mandate, and agreed that the substantial reenactment of a prior statute un-

der which a similar regulation had been issued must be considered to be a tacit approval of the general import of the regulation. This construction is no longer in dispute.

The Government next refers us to a number of cases involving situations not specifically enumerated in the regulation. For example, in Armour, supra, heating and salting were considered accessorial; although neither of these is within the above listing. The Government quite properly concludes that the list is illustrative only, and not exclusive. There is no case cited squarely on point, nor do we find any. This would seem to be a case of first impression.

We are next referred to a number of rulings, only one of which will be discussed here, for the reason that it alone is said to be squarely in point. In Rev. Rul. 58–149, 1958–1 Cum.Bull. 442, it was stated that the tax on transportation of property applies to an amount paid by a shipper to a carrier for weighing empty tank cars.

"The weighing service requested by the shipper is *primarily for the purpose of determining errors, in the billed weight, tare weight, etc.* Accordingly, it is held that such weighing service is an accessorial service furnished in connection with the prior or subsequent transportation of the commodity involved. Therefore, the amount paid to the carrier for such service, when furnished at the request of the shipper or consignee and in connection with a taxable transportation movement, is subject to the tax on the transportation of property, regardless of whether the charge is billed separately." (Emphasis supplied.)

The concept of "accessorial" arising from repeated readings of the Regulation and the cases includes at least two separate types of services. The first is that type of service necessary to the actual movement of property. In this category are included such activities as loading and unloading, blocking and staking, and transfer in transit. The second type of service is directed toward the preservation of the goods, e. g., ventilation, icing, and feeding live stock. Their common denominator is their necessity to the successful completion of the carriage of goods, and the accomplishment of the entire transaction. The act of weighing does not fit neatly into either category proposed above. It is neither directly connected to the movement itself, nor is it directed toward the well-being of the goods. However, where the freight cost is determined by the weight of the property shipped, it is a necessary part of the complete transaction. In the normal situation, the carrier would perform this service without extra charge, because it is to his own benefit that there be a correct weight of the goods on which to base such charges.

In the question to which the within ruling was addressed, the weighing was requested by the shipper to determine errors in the billed weight, tare weight, etc. The weighing is undoubtedly accessorial where the freight costs are to be calculated upon that basis. It would seem to be irrelevant upon whose request the weighing is performed. The necessary connection between the weighing and the completion of the shipping contract is the factor which makes this weighing accessorial.

In the case before us, there are in reality two severable transactions. First, there is the transportation of property, for which there is a charge based upon an amount per car, and *not* per ton. Secondly, there is a transaction wherein cars are weighed, the proper weight reported to the shipper, and a charge exacted per car and *not* per ton. Either transaction could stand by itself. One would be clearly taxable; the other would not. Their conjunction should not change their nature. Congress could not have intended to include all services of a shipper within the term "transportation." To merit consideration as accessorial, the service must properly aid or contribute in some manner to the actual movement of property for hire. We find that element to be entirely lacking here.

On the stipulated facts, we find that the weighing of the property was not an accessorial service furnished in connection with a transportation movement, and therefore, not taxable as a "transportation of property."

Judgment will be entered for Plaintiff.