**Todd Russell REINSTEIN, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 72-1376-IH.**

United States District Court,
C. D. California.

Jan. 26, 1973.

Todd Russell Reinstein, pro. per.

William D. Keller, U. S. Atty., Charles H. Magnuson, Elliott H. Kajan, Asst. U. S. Attys., Los Angeles, Cal., for defendant.

HILL, District Judge.

Findings Of Fact And Conclusions Of Law

Plaintiff's and Defendant's Cross Motions for Summary Judgment came on for hearing on January 15, 1973, before the Honorable Irving Hill, Judge presiding, in Courtroom 12 of the United States District Court. The Court, having considered the said motions and the various papers filed in support thereof and in opposition thereto, makes its Findings of Fact and Conclusions of Law as follows:

Findings of Fact

1. Both counsel agree that there is no genuine issue as to any material fact and that the case is ripe for summary judgment, and the Court so finds.

2. This is an action for the refund of manufacturers' excise taxes on an automobile and interest thereon collected from the Plaintiff by the Defendant.

3. Todd Russell Reinstein, Plaintiff herein, (hereinafter referred to as taxpayer) resides at Beverly Hills, California, within the Central District of California.

4. The taxpayer filed a Federal Excise Tax Return, Form 720, under protest on or about January 26, 1971, for the quarter ending December 31, 1968, with the District Director of Internal Revenue in Los Angeles, California, and, concurrently therewith, on or about January 26, 1971, paid the tax shown to be due thereon in the amount of $256.69, plus interest in the amount of $30.79.

5. Taxpayer filed a timely claim for refund on or about January 26, 1971, with the District Director of Internal Revenue for the refund of manufacturers' excise taxes in the amount of $256.-69, plus interest of $30.79, for the fourth quarterly period of 1968.

6. On or about February 19, 1971, taxpayer was assessed by the Internal Revenue Service for the excise taxes in the amount of $256.69 and interest in the amount of $30.79.

7. On or about May 21, 1971, taxpayer was formally notified by a delegate of the Commissioner of Internal Revenue that his claim for refund was disallowed.

8. Subsequently, this action was timely commenced by taxpayer's complaint which incorporated all of the grounds set forth in taxpayer's claim for refund.

9. Taxpayer is an attorney at law and a professor of tax accounting at the School of Business Administration, California State University.

10. Early during the year of 1968, taxpayer began making plans to travel to Europe on behalf of a client. Concurrently therewith, he decided to include some time for a vacation while he was there. After having advised California State University of his travel plans, he was requested by the school to visit some European campuses for purposes of establishing a rapport with them. Accordingly, during March, 1968, taxpayer decided to take a four-week trip which was to commence late in August, 1968.

11. At or about the time in which the taxpayer's plans to take the trip were formulated, he decided to purchase a 1969 Porsche automobile. His reasons for doing so were twofold: (1) To use the automobile for local transportation in traveling through Europe, and (2) to import it as his automobile for use in the United States. In accordance therewith, during late March or April of 1968, taxpayer telephonically ordered, under a

tourist delivery plan, a 1969 Porsche Model 912/4 automobile from Universal Motor Cars, a Porsche dealership located in Los Angeles. It was not until August 12, 1968, that the formal purchase order for the Porsche was executed and the check in payment therefor in the amount of $4,974.50 was drafted. Of this amount, $493 represented the German excise tax on the Porsche which was refunded to the taxpayer.

12. The original plan was that the taxpayer would accept delivery of the Porsche in Hamburg, Germany, during the early part of his trip, which would have been during the first part of September, 1968. However, shortly before his departure to Europe, taxpayer was advised by Universal Motor Cars that the Porsche would not be ready for delivery until October, 1968, and, thus, taxpayer would not be able to personally accept delivery. In order to compensate taxpayer for the delay, Universal Motor Cars arranged to have an agent pick up the Porsche in Stuttgart, Germany, for the taxpayer and, moreover, it handled the shipment of the Porsche to the United States. Since the taxpayer would not have the use of the Porsche to travel around Europe, Universal Motor Cars gave him free use of a Volkswagen automobile, except for the cost of gasoline.

13. Taxpayer departed for Europe on August 20, 1968. On September 1, 1968, taxpayer picked up the Volkswagen automobile made available to him by Universal Motors. On September 17, 1968, taxpayer departed for Los Angeles.

14. While in Stockholm, the American Consulate there notarized a Power of Attorney executed by taxpayer which designated an agent to accept delivery of the Porsche.

15. On October 15, 1968, taxpayer's agent accepted delivery of the Porsche and title vested at that time. It was not until December 15, 1968, that the Porsche arrived in California for acceptance by taxpayer.

16. At the time taxpayer purchased the Porsche automobile, he intended to and in fact did so use it in his trade or business 70% of the time.

17. Government counsel concedes in argument that for approximately 36 years prior to the promulgation of Revenue Ruling 68–30, 1968–2 Cum.Bull. 481, the Government did not assert that transactions of the type involved in the instant case were taxable, and did not assess tax liability in connection with the importation of any automobile brought in under transactions of this type.

18. Taxpayer had constructive knowledge of Revenue Ruling 68–30 at the time the automobile herein was purchased and has not denied actual knowledge thereof.

19. Any Conclusion of Law deemed to be a Finding of Fact is hereby found as a fact.

## Conclusions of Law

1. This action was brought under Title 28 U.S.C. § 1346(a)(1) and under § 7422(a) of the Internal Revenue Code of 1954. The Court thus has jurisdiction over the parties and the subject matter of this action.

2. The provisions of § 4218 of the Internal Revenue Code of 1954, and the Treasury Regulations pertaining thereto, do not exempt the taxpayer from the payment of excise tax on the importation of the Porsche automobile.

3. Revenue Ruling 68–30, 1968–2 Cum.Bull. 481, is a reasonable implementation of Congressional intent, as manifest by 1954 Internal Revenue Code §§ 4061(a) and 4218(a) and § 48.4218–2 (b) of the Manufacturers & Retailers Excise Tax Regulations, 26 C.F.R. § 48.-4218–2(b).

4. Past forbearance from the assertion and/or collection of the excise tax in transactions of the type involved in the instant case, under the facts and circumstances of this case, is not tantamount to an articulation of policy, which, through consistent application and implied Congressional approval, attains the force and effect of law, as in Helvering

v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 [21 AFTR 962] (1938); Boehm v. Commissioner, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78 [34 AFTR 10] (1945), and Commissioner v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 [34 AFTR 301] (1945).

5. Revenue Ruling 65–317, 1965–2 Cum.Bull. 422, even when viewed against the background of past forbearance from the assertion and collection of excise tax in transactions of the type ·involved in the instant case, does not constitute a reduction to writing of an interpretation of the term "incidentally imports" (as that term is used in Regulation 4218–2(b)), from which Revenue Ruling 68–30 constitutes a departure:

(a) The philosophy underlying Rev. Rul. 65–317 and Rev.Rul. 68–30 is the same and the rulings are consistent one with the other.

(b) Any language in Rev.Rul. 65–317 which could possibly give rise to the view that "incidentally imports" means anything other than what the term is construed to mean in Rev.Rul. 68–30 is so general, vague and imprecise as to make unreasonable or unwarranted any reliance thereupon, and

(c) Even if the language is assumed, arguendo, to be precise enough to justify any reliance, the language is dicta and not necessary to the result reached under the facts presented to the Commissioner in Rev.Rul. 65–317.

6. Additionally, the Commissioner, under the facts and circumstances of this case, is not precluded from a change of position (even assuming, arguendo, that Rev.Rul. 68–30 is a departure from past practice and/or from policy as announced in Rev.Rul. 65–317) and this case is thus distinguishable from United States v. Byrum, 408 U.S. 125, 92 S.Ct. 2382, 33 L.Ed.2d 238 [29 AFTR 2d 72–5811] (1972), on the following grounds:

(a) Rev.Rul. 68–30 was applied only prospectively, thereby not upsetting whatever reliance, however reasonable, that existed prior to the promulgation of Rul. 68–30, on past practice of forbearance, and

(b) Byrum involved trust instruments. The interest of stability in the tax law in this case does not approach the magnitude of such interest in Byrum, supra, wherein a departure from a prior interpretation of the tax laws could have far-reaching disruptive consequences in the estate planning field.

7. Taxpayer is liable for federal excise taxes and interest in the amount of $278.48 on the Porsche automobile which he imported in 1968, under the provisions of § 4061(a)(2) of the Internal Revenue Code of 1954.

8. The taxpayer is not entitled to prevail, and the Defendant is entitled to judgment in its favor.

9. Any finding of fact deemed to be a conclusion of law is hereby concluded as a matter of law.