**GOLCONDA MINING CORPORATION, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**GOLCONDA MINING CORPORATION, Petitioner-Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**Nos. 72–3202, 73–1162 and 73–1161.**

United States Court of Appeals, Ninth Circuit.

Nov. 19, 1974.

F. A. LeSourd (argued), LeSourd, Patten, Fleming & Hartung, Seattle, Wash., for petitioner-appellant (72–3202) and cross-appellee.

William S. Estabrook, III, Asst. Atty. Gen. (argued), Tax Div., U. S. Dept. of Justice, Washington, D. C., for respondent-appellee and cross-appellant.

Before CHOY and WALLACE, Circuit Judges, and PALMIERI,* District Judge.

PALMIERI, District Judge:

Golconda Mining Corporation (Golconda), a publicly held Idaho corporation, has operated in the Coeur d'Alene mining district of that state for many years. An area approximately 30 miles long by 20 miles wide, the Coeur d'Alene has been recognized as one of the principal mining areas of the world for the production principally of lead, zinc, silver and by-products of copper and gold. In recent years it has produced almost half of the nation's silver.

During the period involved in this case Golconda stock was listed on three stock exchanges in this country and one in Canada.

Golconda appeals from a decision of the United States Tax Court, 58 T.C. 139 and 58 T.C. 736 (Supplemental Opinion on motion for reconsideration), entered on September 27, 1972, insofar as it held that Golconda was liable for a deficiency in income tax due to the Commissioner for the year 1966. The Commissioner of Internal Revenue appeals from the decision of the Tax Court insofar as it held that Golconda was not subject to the tax imposed under the Internal Revenue Code of 1954, 26 U.S.C. §§ 531–537,** and particularly § 533, the "accumulated earnings" tax, for the years 1962 through 1965. The notices of appeal were timely filed and this Court has jurisdiction. 26 U.S.C. §§ 7482, 7483.

The detailed facts as found by the Tax Court appear in the reported decisions, *supra,* and need not be reiterated here.

### The Application of the Accumulated Earnings Tax to Publicly Held Corporations

The Tax Court recognized that the threshold question presented for its decision was whether the accumulated earnings tax may be imposed upon a publicly held corporation. That Court expressed its awareness of the underlying legislative history of § 533 which demonstrated Congress' recognition that the tax had not been applied to publicly held corporations. It held, nevertheless, that under the section's language the tax was *"theoretically"* applicable to any corporation irrespective of the nature of its ownership, thereby deciding the threshold

---

* United States District Judge for the Southern District of New York, sitting by designation.

** See Appendix appended hereto.

question adversely to Golconda. While its ultimate finding was that for the years 1962 through 1965 petitioner did not accumulate its earnings and profits beyond the reasonable needs of its business, the appeal of the Commissioner of Internal Revenue (Commissioner) from this finding, as well as Golconda's appeal as to the year 1966, place this issue squarely before us.

Since the enactment of the Revenue Act of 1913, 38 Stat. 166, and the advent of the accumulated earnings tax established therein, there has been only one instance in which the tax was applied to a publicly held corporation—Trico Products Corp. v. Commissioner, 137 F.2d 424 (2d Cir. 1943); Trico Products Corp. v. McGowan, 169 F.2d 343 (2d Cir. 1948). Relying upon these cases the Tax Court stated (58 T.C. 139, at 158–159) that,

". . . the mere fact that petitioner had from 1,500 to 2,900 shareholders during the years in issue and petitioner's management group owned or controlled no more than approximately 12 to 17 percent of its issued and outstanding stock cannot preclude per se further inquiry into whether the facts disclosed in this proceeding dictate that the accumulated earnings tax be imposed upon petitioner for any of the years involved herein."

We believe the reliance of the Tax Court upon the *Trico* cases was misplaced. The *Trico* cases involved a corporation that for the tax years in question was owned and controlled by a group of twenty-one shareholders who held between 62 and 68 per cent of the company's total shares, either directly or indirectly through their ownership of a type of holding company which owned 55 per cent of the taxpayer corporation. The holding company itself was controlled by six stockholders who held 85 per cent of its stock and of these six it is clear that at least two were the guiding officers and it appears that all six were officially involved in the management of the company in one capacity or another. "In practice, the accumulated-earnings provisions are applied only to closely held corporations, controlled by relatively few shareholders." United States v. Donruss Co., 393 U.S. 297, 310, 89 S.Ct. 501, 508, 21 L.Ed.2d 495 (1969) (concurring opinion of Harlan, J.), citing the legislative history of the reenactment of the tax in the Internal Revenue Code of 1954, S.Rep.No.1622, 83d Cong., 2d Sess. 69 (1954), and B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders 213–14 (2d ed. 1966). *See also* 7 Mertens, Law of Federal Income Taxation § 39.54 at 110 (1967 Rev'n) and *id.* § 39.54, at 18 (1974 Supp.).

The House version of the reenactment contained a provision which would have specifically excepted corporations which had more than 1,500 shareholders and no more than ten per cent of the stock of which was held, either directly or constructively, by any individual from the accumulated tax provisions. H.R.8300, 83d Cong., 2d Sess. § 532 (1954). The Report specifically noted that "as a practical matter, the provision has been applied only in cases where 50 percent or more of the stock of a corporation is held by a limited group" and "the area of tax avoidance through retention of corporate earnings is confined to closely held companies." H.R.Rep.No.1337, 83d Cong., 2d Sess. 54, U.S.Code Cong. & Admin.News, p. 4080 (1954). Section 532 of the House bill was deleted by the Senate, which also recognized that "as a practical matter, the provision has been applied only in cases where 50 percent or more of the stock of a corporation is held by a limited group." S.Rep.No. 1622, 83d Cong., 2d Sess. 69, U.S.Code Cong. & Admin.News, p. 4700 (1954). The Senate's reason for not providing a specific exemption for publicly held corporations, however, was not to include them expressly as being subject to the accumulated earnings tax, but rather because,

"Testimony before your committee has indicated that it would be very difficult for many corporations which are generally recognized to be publicly held to establish from its records that no more than 10 percent of its stock is

held by an individual and members of his family. Yet if publicly held corporations are to be exempted from this tax it is recognized that a requirement of this type is needed. In view of this and the fact that this tax is not now in practice applied to publicly held corporations, your committee believed it was desirable to remove the exemption provided for such corporations by the House bill." *Id.*

■ There is, of course, no distinction in the statutory language between publicly and closely held corporations. *See also* Treas.Reg. § 1.532–1 (1959). Yet, as the Supreme Court stated in Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 46, 83 L.Ed. 52 (1938), "Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law."

While the Tax Court could justifiably conclude that H. F. Magnuson and Wray Featherstone, Golconda's president, were important and influential stockholders, it is simply not the case that, as a matter of law, these persons, in concert with others, who owned at most approximately seventeen per cent of the outstanding stock of Golconda, could exercise such "control" over the corporation as to bring it within the congressionally-approved accumulated earnings tax provisions.

Golconda had cumulative voting for directors throughout the years in question. The seventeen per cent ownership by Magnuson and the officers and directors of the company would only entitle them to seventeen per cent representation on the board of directors. That Featherstone and Magnuson solicited proxies on behalf of the incumbent management naming them as "attorney and proxy" is nothing more than the perquisite of their positions as members of management as well as stockholders.

As the Tax Court recognized, David A. Noyes & Co., a Chicago securities brokerage house, owned about as much stock in Golconda as Magnuson, and at one point claimed control of some 440,000 shares of its stock or approximately twenty-two per cent.

■ Thus, even if a person or group of persons could be said to effectively control a company with less than fifty per cent ownership of its stock for the purposes of the accumulated earnings tax, there is nothing to show that the group of people associated with Magnuson did so in this instance as stockholders. With the reenactment of the accumulated earnings tax in the Internal Revenue Code of 1954, 26 U.S.C. §§ 531–537, Congress did not intend to change the longstanding practice and application of the tax to closely held corporations and these corporations alone. Golconda was, and apparently still is, a widely held, publicly owned corporation whose stock is similarly and actively traded. It is, therefore, not subject to the accumulated earnings tax provisions.

What we have already said leads us to conclude that the accumulated earnings tax should not have been applied in this case and that Golconda is entitled to prevail with respect to all the years in question, namely 1962 through 1966. We hold the Tax Court was in error in holding the accumulated earnings tax to be applicable to publicly held corporations, and we remand with directions to enter its decision in each case consonant with this opinion.

## APPENDIX

Internal Revenue Code of 1954 (26 U.S.C.):

§ 531. *Imposition of accumulated earnings tax*

In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the accumulated taxable income (as defined in section 535) of every corporation described in section 532, an accumulated earnings tax equal to the sum of—

(1) 27½ percent of the accumulated taxable income not in excess of $100,000, plus

(2) 38½ percent of the accumulated taxable income in excess of $100,000.

§ 532. *Corporations subject to accumulated earnings tax*

(a) *General rule.*—The accumulated earnings tax imposed by section 531 shall apply to every corporation (other than those described in subsection (b)) formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed.

(b) *Exceptions.*—The accumulated earnings tax imposed by section 531 shall not apply to—

(1) a personal holding company (as defined in section 542).

(2) a foreign personal holding company (as defined in section 552), or

(3) a corporation exempt from tax under subchapter F (section 501 and following).

§ 533. *Evidence of purpose to avoid income tax*

(a) *Unreasonable accumulation determinative of purpose.*—For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary.

\*      \*      \*      \*      \*      \*

§ 535. *Accumulated taxable income*

(a) *Definition.*—For purposes of this subtitle, the term "accumulated taxable income" means the taxable income, adjusted in the manner provided in subsection (b), minus the sum of the dividends paid deduction (as defined in section 561) and the accumulated earnings credit (as defined in subsection (c)).

(b) *Adjustments to taxable income.*—For purposes of subsection (a), taxable income shall be adjusted as follows:

(1) *Taxes.*—There shall be allowed as a deduction Federal income and excess profits taxes (other than the excess profits tax imposed by subchapter E of chapter 2 of the Internal Revenue Code of 1939 for taxable years beginning after December 31, 1940) and income, war profits, and excess profits taxes of foreign countries and possessions of the United States (to the extent not allowable as a deduction under section 275(a)(4)), accrued during the taxable year or deemed to be paid by a domestic corporation under section 902(a)(1) or 960(a)(1)(C) for the taxable year, but not including the accumulated earnings tax imposed by section 531, the personal holding company tax imposed by section 541, or the taxes imposed by corresponding sections of a prior income tax law.

\*      \*      \*      \*      \*      \*

§ 537. *Reasonable needs of the business*

(a) *General rule.*—For purposes of this part, the term "reasonable needs of the business" includes—

(1) the reasonably anticipated needs of the business.